IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERESA M.

                        Plaintiff,

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                        Defendant.

Case No. 6:17-cv-00466-MA

OPINION AND ORDER

MARSH, Judge

    Plaintiff Teresa M.[1] seeks judicial review of the final decision of the Commissioner of Social

Security denying her applications for a period of disability and disability insurance benefits ("DIB")

and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 401-403, and 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3). For the reasons that follow, the court affirms Commissioner's decision.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial
of the last name of the non-governmental party in this case. Where applicable, this Opinion and
Order uses the same designation for a non-governmental party's immediate family member.

1 - OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed her application for SSI on June 21, 2013. Plaintiff protectively filed her application for a period of disability and DIB benefits on July 16, 2013. In both applications, Plaintiff alleges disability beginning March 1, 2002, due to PTSD, agoraphobia, fear of driving, suicidal thoughts, obesity, type II diabetes, kidney failure, severe muscle cramping, scoliosis, bad arms and legs, severe sleep apnea, right leg shorter than left leg, fibromyalgia, MRSA, five hernias, asthma, high blood pressure, memory loss, severe irritable bowel syndrome, status post gallbladder removal, knee injury, full hysterectomy, bad shoulders, left eye cataract, hip problems, severe insomnia, depression, chronic nausea, chronic diarrhea, chronic heart burn, and persistent headaches. Tr. Soc. Sec. Admin. R. ("Tr.") 29, 87, ECF No. 7. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on May 14, 2015, at which Plaintiff appeared with her attorney and testified. A vocational expert, Nancy E. Bloom, also appeared at the hearing and testified. At the hearing, Plaintiff amended her alleged onset date to June 21, 2013, and dismissed her claim for Title II benefits. Tr. 49. On July 27, 2015, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was 35 years old on the alleged onset of disability date and was 50 years old on the date of the hearing. Tr. 38, 104, 143. Plaintiff obtained a GED and has past relevant work as a certified nursing assistant. Tr. 37.

////

////

2 - OPINION AND ORDER

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the bilateral shoulders, degenerative joint disease of the left hip and left knee, morbid obesity, diabetes mellitus with peripheral neuropathy, chronic obstructive pulmonary disorder ("COPD"), asthma, affective disorder, anxiety disorder, attention deficit hyperactivity disorder, obsessive-compulsive disorder, borderline personality disorder, and post-traumatic stress disorder. At step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform sedentary work with additional limitations:

> [Plaintiff] requires the option to alternate between sitting and standing, at will, while remaining on-task. She may not climb, kneel, crouch, or crawl. She occasionally may bend and stoop. [Plaintiff] is limited to occasional overhead reaching bilaterally. She should avoid all exposure to pulmonary irritants, such as fumes, odors, dusts, gases, or poor ventilation. She also should avoid all exposure to workplace hazards, such as unprotected heights or moving mechanical parts. [Plaintiff] is limited to performing simple routine tasks, which can be learned within 30 days and which do not require more than superficial (defined as casual or perfunctory) interaction with coworkers and the public.

Tr. 28.

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, including such representative occupations as: addresser, semiconductor wafer breaker, and document preparer. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act through July 27, 2015.

## ISSUES ON REVIEW

On appeal to this court, Plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated her testimony; (2) the ALJ improperly evaluated the opinion of Dr. Santana; (3) the ALJ erred by failing to find her fibromyalgia a medically determinable impairment at step two; and (4) the ALJ erred at step five. The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error. Alternatively, the Commissioner contends that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159; (internal quotations omitted); *Garrison*, 759 F.3d at 1009. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1009.

The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

## DISCUSSION

### I.     The ALJ Did Not Err in Discounting Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo*, 871 F.3d at 678; 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or

adverse side effects of any pain medication, and relevant character evidence.[2] *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified that in the previous two years, she has not received any ongoing mental health counseling, but instead discussed her mental health conditions with her primary care physician Castel Santana, M.D. Tr. 55-56. Plaintiff indicated that Dr. Santana treated her for a number of issues, including depression, anxiety, and COPD. Tr. 56-57. Plaintiff indicated that in a typical day, she stays in her apartment and keeps to herself and reads or watches television. Tr. 58. Plaintiff testified that her left hip is rubbing "bone on bone" and that six months earlier, she had an injection in her hip. Tr. 60. Plaintiff stated that prior to the injection, she was trying to ride her stationary bike and trying to lift a few weights for exercise. Tr. 60.

Plaintiff testified that in July 2014, she and her son unloaded bags of pellets from a pickup truck for her father's pellet stove. Tr. 58. Plaintiff stated that she dragged the bags of pellets in the bed of the pickup, then let it fall from the bed of the pickup to the ground, and then her son picked up the bag and put it in the garage for her parents. Tr. 59. Plaintiff stated that she wanted to help her parents because her father has Parkinson's disease. Tr. 59. Plaintiff testified that she has fibromyalgia and tears in her shoulders, and that she should not have been lifting and dragging 40 pound bags of pellets. Tr. 60.

---

[2] The Court observes that on March 28, 2016, Social Security Ruling ("SSR") 16-3p became effective, and it eliminated the use of the term "credibility" and superceded SSR 96-7p. The ALJ's decision in this case was issued July 27, 2015. SSR 16-3p explains that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." SSR 16-3p, *available at* 2017 WL 5180304, *13 n.27 (Oct. 25, 2017). Therefore, the Court applies SSR 96-7p to the evaluation of Plaintiff's symptom testimony.

Plaintiff testified that she is right hand dominant and she can pick up a gallon of milk with her left arm. Tr. 60-61. Plaintiff testified that once a week she shops at the grocery store with her daughter for 25 minutes, but that she is panicked the whole time, and she does not like to be around people. Tr. 61-62. Plaintiff described that she lives by herself, and her adult daughter comes over to assist with washing dishes, and occasionally brings her meals. Tr. 62. Plaintiff testified that she smokes half a pack of cigarettes per day and has asthma and COPD. Tr. 63.

Plaintiff stated that she cannot work due to her unpredictable diarrhea, pain in her arms and legs, and her inability to be around people. Tr. 66. Plaintiff described that she feels overwhelmed by people in public. Tr. 74. Plaintiff testified that she worked as a certified medication assistant ("CMA") passing out medications at a nursing home and hospital. Tr. 68. Plaintiff also has worked as a certified nursing assistant ("CNA"). Tr. 68-69.

Plaintiff stated that she has chronic diarrhea, with seven bowel movements per day, and that her condition is unpredictable. Tr. 69-70. Plaintiff testified that each trip to the bathroom can last between five and fifteen minutes. Tr. 69. Plaintiff stated that she is unable to go out alone, and experiences shortness of breath, choking, and increased heart rate. Tr. 70. Plaintiff testified that she can use her hands for 20 minutes before they get numb and she needs to rest her arms for a couple of hours before using them again. Tr. 71-72. Plaintiff stated that her pain is worse, and that she can walk two blocks before needing to rest.

In a July 29, 2013 Function Report, Plaintiff described that she has severe sleep apnea, which makes it difficult to sleep with her CPAP machine. Tr. 266. Plaintiff indicated that she has difficulty getting dressed due to pain in her arms, and that her daughter reminds her to get dressed and take her medication. Tr. 267-68. Plaintiff noted that she makes easy meals daily. Tr. 268.

Plaintiffs indicated that she can perform household chores such as sweeping and dishes for 15 minutes at a time, but that her daughter does her laundry. Tr. 269. Plaintiff stated that she has panic attacks with sweating, and no longer drives. Tr. 270. Plaintiff noted she enjoys reading and watching television. Tr. 273. Plaintiff noted that she only leaves the house to attend appointments, and needs someone to go with her. Tr. 274. Plaintiff indicated that her conditions cause her to have difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, climbing stairs, seeing, memory, concentration, completing tasks, understanding, following instructions, using her hands, and getting along with others. Tr. 275. Plaintiff estimated she can walk 100 feet before needing to rest for a couple of minutes, and has difficulty concentrating, cannot handle stress or changes in routine. Tr. 276. Plaintiff indicated that she uses arm braces at night. Tr. 279. In a March 19, 2014 Disability Report, Plaintiff stated that her depression had worsened, and that she was experiencing thoughts of suicide and bursts of anger with constant crying. Tr. 300.

Plaintiff argues that the ALJ failed to identify clear and convincing reasons for discounting her subjective symptom testimony. The Court disagrees. In the decision, the ALJ provided several reasons for discounting Plaintiff's symptom testimony, including: (1) the objective medical evidence fails to support the severity of her claims; (2) conservative treatment effectively controls many of her alleged impairments; and (3) inconsistent statements about her activities of daily living.

### A. Objective Medical Evidence Does Not Support Severity of Plaintiff's Allegations

Contradiction with the medical record is a relevant consideration in discounting a claimant's credibility. *Carmickle*, 533 F.3d at 1161; see also *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (holding that ALJ may consider lack of medical evidence but it cannot be the only factor supporting an adverse credibility finding); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)

("While subjective . . . testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's symptoms and their disabling effects." (citing 20 C.F.R. § 404.1529(c)(2)). The ALJ provided a detailed analysis of how the objective medical evidence fails to support the severity of Plaintiff's limitations due to her shoulder, hip, and knee pain, depression and anxiety. Tr. 29-34.

The ALJ discussed that Plaintiff's allegations of bilateral shoulder pain, weakness, and decreased range of motion are partially supported by the record. The ALJ detailed that a May 18, 2009 cervical spine MRI was performed for Plaintiff's alleged shoulder-pain revealed negative results. Tr. 29, 363. The ALJ noted that left shoulder imaging completed on May 18, 2009 showed mild hypertophic changes in the acromioclavicular joint, and right shoulder imaging showed focal degenerative changes in the acromioclavicular joint, with otherwise normal findings. Tr. 29-30, 365, 367. The ALJ discussed left shoulder imaging conducted on April 29, 2015 that revealed degenerative changes at the acromioclavicular joint and a small full-thickness tear of the rotator cuff, without edema or atrophy. Tr. 30, 528. The ALJ also discussed the contemporaneous right shoulder imaging that revealed osteoarthritis in the genohumeral joint, and a small full-thickness tear of the anterolateral leading edge of supraspinatus, a partial-thickness tear of supcapularis, and a torn and retracted long biceps tendon. Tr. 30. The ALJ found that Plaintiff's degenerative changes in her left shoulder are significant, and warranted limiting Plaintiff to sedentary work with only occasional bilateral overhead reaching in the RFC. The ALJ also found that Plaintiff's bilateral rotator cuff tears were expected to heal within 12 months, and thus were nonsevere. Tr. 30. The ALJ's findings are a reasonable interpretation of the record, and are wholly supported by substantial evidence. To

the extent the ALJ found Plaintiff's allegations of shoulder pain credible and supported by objective evidence, the ALJ incorporated those limitations into the RFC.

Next, the ALJ found that Plaintiff's complaints of severe knee problems were not fully supported by the medical record. Here, the ALJ discussed that contrary to Plaintiff's assertion of severe knee problems, October 26, 2010 imaging of her knees showed only mild degenerative joint disease in the lateral compartment and minimal in the patellofemoral compartment. Tr. 30, 361. Additionally, as the ALJ correctly indicated, the imaging revealed no significant joint space narrowing or osteophytosis. Tr. 30, 361. The ALJ also discussed other records undermining her allegations, including reports to her treating physician in July 2011 that she was walking for exercise five times a week, and performing other exercises four times a week. Tr. 30, 413. Notably, the ALJ discussed an October 19, 2013 physical consultative examination in which Plaintiff was able to go from sitting to standing without difficulty, displayed a normal gait, can heel and toe walk without difficulty, and rise from a squat within normal limits. Tr. 499. The ALJ's findings are wholly supported by substantial evidence, and are a reasonable interpretation of the record.

Also, the ALJ found that Plaintiff's allegations of severe left hip pain are not fully supported by the medical evidence. Here, the ALJ discussed that in October 2014, Plaintiff described to her then treating physician Samir Ale, M.D., acute pain in the left hip, and an x-ray and CT scan showed degenerative disease of the left hip and pubic symphysis. Tr. 30, 545, 583. Dr. Ale referred her for an orthopedic consultation. Tr. 544. Plaintiff met with Michael McLean, M.D., and reported acute left hip pain (at a 10/10) ongoing for two months, describing it as feeling "bone on bone." Tr. 519. As the ALJ accurately described, Dr. McLean's November 10, 2014 treatment note indicates that the previous x-rays showed mild arthritic changes in the left hip. Tr. 30, 519. And, as the ALJ correctly

noted, immediately prior to meeting with Dr. McLean, Plaintiff underwent an MRI scan of her bilateral hips. Tr. 30, 519. To be sure, Dr. McLean's note indicates that he contacted the radiologist for his interpretation of the MRI, and the radiologist indicated that "he could see nothing other than some mild changes."[3] Tr. 519. Thus, as the ALJ accurately indicated, the November 2014 MRI showed mild degenerative changes, and Dr. McLean recommended a steroid injection. Tr. 30, 519-20. Indeed, on December 16, 2014, Plaintiff received an intra-articular steroid injection into the left hip, and was noted to have tolerated the procedure well. Tr. 31, 585. To be sure, in her briefing to the court, Plaintiff highlights no objective findings concerning Plaintiff's left hip that the ALJ failed to take into account.

The ALJ's findings in this regard are wholly supported by substantial evidence. Based on the lack of significant findings and successful steroid injection, the ALJ could reasonably infer that the severity of Plaintiff's subjective limitations due to hip pain are not supported by the objective medical evidence and appropriately discounted her credibility on this basis. *Carmickle*, 533 F.3d at 1169; *Aguirre v. Comm'r Soc. Sec. Admin.*, 2017 WL 4697072, *6 (upholding ALJ's adverse credibility determination where claimant's limitations not fully supported by medical record).

---

[3] The court notes that the November 10, 2014 MRI also revealed an "incidental finding of synovial herniation of the left femoral neck. This can be associated with femoral acetabular impingement." Tr. 584. In a follow-up visit with Dr. Ale on November 17, 2014, Plaintiff indicated that her MRI showed "acetabular impingement syndrome with synovial herniation" and that Plaintiff was continuing to work with Dr. McLean, who was considering arthroscopy. Tr. 535. Dr. Ale's November 17, 2014 treatment note further shows that Plaintiff was doing well on her current pain management regime and that she was able to walk without assistance. Tr. 535. Significantly, Dr. McLean's November 10, 2014 treatment note does not mention femoral acetabular impingement, instead discussing only mild degenerative changes. Tr. 519. Moreover, the record before the court is devoid of any additional records from Dr. McLean confirming acetabular impingement. Aside from the steroid injection discussed above, there are no other records before the court indicating Plaintiff was, in fact, recommended for arthroscopy or any additional orthopedic work-up on her left hip.

Finally, the ALJ discussed that Plaintiff's depression and anxiety are not as severe as alleged. After extensively reviewing Plaintiff's medical record, the ALJ found that Plaintiff's psychological symptoms impose some restrictions, but that they do no preclude employment, and that despite experiencing depression and anxiety, she maintains good mental functioning. Tr. 33. Plaintiff's medical records reflect that she was treating her depression and anxiety with venlafaxine and buspirone in 2012, and in January 25, 2013, was again started on venlafaxine. Tr. 388, 393. Plaintiff then switched providers to Dr. Santana in August 2013. Tr. 513. At that point, Plaintiff reported that she has a 12 year history of depression and anxiety, and was not then taking any medication, and was very depressed. Tr. 513. Dr. Santana's August 2013 treatment note reflects that Plaintiff was experiencing severe depression, and that he wanted to start Plaintiff on zoloft and cognitive behavioral therapy. Tr. 515. On November 8, 2013, Plaintiff reported to Dr. Santana that she had been on venlafaxine for a long time, and that she felt it was no longer working. Tr. 506. As the ALJ noted, Dr. Santana indicated Plaintiff's depression and anxiety have been poorly controlled and Dr. Santana switched her medication to viibryd. Tr. 32, 507. At a recheck appointment in December 2013, Dr. Santana noted her depression with anxiety has been better controlled with viibryd, and Plaintiff reported feeling much better. Tr. 32, 502. In March 2014, Plaintiff reported that viibryd was not working, as she was still having "pretty frequent" crying episodes. Tr. 568. Dr. Santana advised her to taper off viibryd and add cymbalta for her depression, and prescribed clonazepam for her anxiety. Tr. 571. At a follow up appointment in April 2014, Plaintiff reported to Dr. Santana that she felt her depression had stabilized, but that her anxiety was increasing, and that her current dosage of clonazepam was not enough. Tr. 564. As the ALJ correctly indicated, Dr. Santana noted that Plaintiff's depression had improved, her anxiety had increased secondarily due to situational

stressors. Tr. 32, 566. Dr. Santana increased Plaintiff's dosages of clonazepam and cymbalta. Tr. 566. Dr. Santana's May 2014 treatment notes reflect that Plaintiff's mood was great, and that her depression was very controlled at that time. Tr. 563. Plaintiff was noted to be "smiling and happy." Tr. 563.

In July 2014, Plaintiff reported to Dr. Santana that she has increased anxiety due because Dr. Santana was closing his practice and she would need a new primary care physician. Tr. 554. At that time, Plaintiff expressed concern about her father, and asked for a companion pet to ameliorate her depression, and increased PTSD feelings. Tr. 554. Again, as the ALJ correctly observed, Dr. Santana noted Plaintiff's increased anxiety and depression were situational, and that her increased PTSD exacerbates her depression and anxiety. Tr. 556.

In October 2014, Plaintiff established care with Samir Ale, M.D. Tr. 542. At that visit, Plaintiff did not complain about anxiety or depression, and Dr. Ale's treatment notes indicates that Plaintiff was tearful at times, and Plaintiff complained of insomnia. Tr. 544-45. Instead, Plaintiff's chief complaint was of the pain in her left hip. Tr. 542. Two weeks later, at a follow-up on her bilateral hip imaging, Dr. Ale noted that Plaintiff was not sad or tearful, had no anxiety, did not complain of insomnia, and had no difficulty concentrating. Tr. 541. At November 2014 visit, Dr. Ale likewise indicated Plaintiff was not sad, tearful, or anxious. Tr. 537. In March 2015, Plaintiff was again noted to be tearful and irritable with insomnia, but without anxiety. Tr. 534. Dr. Ale's treatment notes reflect that he continued to prescribe clonazepam and cymbalta. Tr. 533.

The ALJ also discussed a consultative psychiatric examination conducted by Charles Reagan, M.D., on October 17, 2013. Tr. 32-33, 493. As the ALJ indicated, Plaintiff informed Dr. Reagan that her primary concern was PTSD and that she was exposed to "death and dying" through her work

as a certified nursing assistant in a hospital. Tr. 33, 494. Plaintiff described nightmares, irritability, difficulty expressing emotion, exaggerated startle response, and hypervigilance. Tr. 33, 494. On the mental status examination, Dr. Reagan found that Plaintiff was moderately anxious, remembered two of three items after five minutes, spelled world correctly forward and missed one letter backward, had difficulty performing multiplication and division, but was able to name the last five presidents correctly and was aware of the news. Tr. 33, 496. Dr. Reagan's impression was that Plaintiff's PTSD began with abuse as a child, and that her work in the hospital exacerbated that pre-existing condition. Tr. 496. As the ALJ indicated, Dr. Reagan diagnosed a panic disorder, described as "mild." Tr. 32, 496. Dr. Reagan also diagnosed generalized anxiety disorder as mild to moderate. Tr. 496. Dr. Reagan found Plaintiff had a mild impairment in concentration. Tr. 33, 497.

The ALJ also thoroughly discussed that Plaintiff underwent a psychiatric evaluation conducted by Gail Wahl, Ph.D., on May 22, 2015. Tr. 33. The ALJ noted that Dr. Wahl's treatment note reflects that Plaintiff was anxious and depressed during the interview and cried frequently. Tr. 586. The ALJ observed that Plaintiff complained of nightmares, intrusive memories, and significant anxiety when leaving the house, causing panic attacks. Tr. 33, 586. Dr. Wahl opined that Plaintiff is capable of performing simple and routine tasks, but would have difficulty with maintaining concentration for prolonged periods. Tr. 37, 587. Dr. Wahl further opined that based on Plaintiff's presentation, she would have difficulty meeting attendance standards. Tr. 587. The ALJ discounted this portion of Dr. Wahl's opinion – a finding unchallenged by Plaintiff. Tr. 37.

The ALJ thoroughly discussed Plaintiff's medical record relating to her mental health symptoms. Based on the court's review, the ALJ could reasonably find that overall, Plaintiff's depression and anxiety are not as severe as alleged. In 2013, Dr. Santana noted her depression and

anxiety were severe, however, at that time, she reported to him that she had not been taking her medication, or that her medication was ineffective. Dr. Santana prescribed medications, and she improved within a few months. As the ALJ indicated, Plaintiff's treating physicians described exacerbations of anxiety as situational, and examining physician Dr. Reagan described Plaintiff's mental health limitations as mild, causing a mild limitation with her concentration, a finding unchallenged by Plaintiff. Moreover, as the ALJ correctly noted, the record is devoid any ongoing therapy with a counselor, or regular treatment with a psychologist or psychiatrist. Tr. 34. Indeed, the ALJ found that contrary to her allegations of severe depression, anxiety and panic attacks when around others, Plaintiff impairments do not prevent her interacting with others. Tr. 34. The ALJ discussed that Plaintiff's friend reported meeting with Plaintiff on a weekly basis, Plaintiff reported caring for her sick father, that she regularly interacts with her daughter, and is able to attend medical appointments regularly and without difficulty. Tr. 34. Thus, the ALJ found that Plaintiff's allegations of disabling mental health symptoms were not fully supported by the objective medical evidence. The ALJ's findings are supported by substantial evidence and inferences reasonably drawn therefrom, and thus will not be disturbed. *See Garrison*, 759 F.3d at 1010 (noting where evidence can support ALJ's determination, it must be affirmed); *Batson*, 359 F.3d at 1193 (requiring court to defer to the ALJ when substantial evidence supports the ALJ's reasoning).

Plaintiff complains that the ALJ selectively reviewed the medical evidence of her mental health limitations. Plaintiff contends that the ALJ failed to properly consider records from the Waterfall Clinic, where she received care in July 2012 and January 2013. Tr. 385-395. According to Plaintiff, these records reflect that her anxiety and depression are severe and have been ongoing for several years. Pl.'s Br. at 13, ECF No. 9. Having carefully reviewed the Waterfall Clinic

treatment notes cited by Plaintiff, the court determines that contrary to Plaintiff's suggestion, the notes provide additional substantial evidence for the ALJ's adverse credibility determination. The July 2012 treatment note reflects that Plaintiff complained of arm, leg, and general body pain, with insomnia, suicidal thoughts, and with an angry and depressed mood. Tr. 393-95. However, the treatment note further reflects that Plaintiff requested opioids for her chronic shoulder pain. Tr. 395. Nurse Practitioner Willis advised Plaintiff that opioids would not be prescribed: "I explained that with only minimal damage visible on shoulder x-ray, no follow-through on referrals to orthopedics and with multiple drug screens showing marijuana use, she is not a candidate for opioid therapy here." Tr. 395. Additionally, the January 2013 treatment note reflects that Plaintiff complained of ongoing depression and anxiety and was requesting lorazepam that was discontinued by a previous provider. Tr. 388. Nurse Practitioner Jeffrey Leppert informed Plaintiff that she was informed of the clinic policy on controlled medications, including tramadol and benzodiazepines, and they "are not appropriate medication[s] for her anxiety." Tr. 388.

Therefore, the court concludes that the ALJ did not selectively review the record. As the ALJ correctly observed, Plaintiff does experience ongoing depression and anxiety, with symptoms that wax and wane. Based on the record, the ALJ found that the severity of Plaintiff's depression and anxiety were not fully supported. The ALJ's interpretation is reasonable, supported by substantial evidence, and inferences reasonably drawn from the record as a whole. Even if the record could support Plaintiff's contrary interpretation, the court may not engage in second-guessing. *Molina*, 674 F.3d at 1111 (if evidence is susceptible to more than one rational interpretation, ALJ's findings must be upheld if supported by reasonable inferences); *Tommasetti*, 533 F.3d at 1038-39 (if ALJ's conclusion supported by substantial evidence, court may not engage in second-guessing).

## B. Many of Plaintiff's Conditions are Effectively Controlled with Medication

An ALJ may appropriately discount a claimant's subjective symptom testimony where the medical evidence shows that the condition is well-controlled with medication. *See Tommasetti*, 533 F.3d at 1039-40 (finding ALJ properly discounted claimant's testimony that diabetes was disabling where medical record showed it was controlled with medication); *Warre ex rel. E.R. IV v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication [and treatment] are not disabling."). In the instant case, the ALJ detailed that Plaintiff's contention that she is disabled by her diabetes, peripheral neuropathy, COPD and asthma is undercut by evidence showing these conditions are effectively controlled with medication.

The ALJ discussed that Plaintiff's type II diabetes has been well-controlled with metformin, and that she regularly monitors her glucose levels, which are typically normal. Tr. 31. Additionally, the ALJ indicated that Plaintiff reports to her treating physicians that she monitors her feet daily, and she is typically compliant with her diabetic diet. Tr. 31. The ALJ's findings are wholly supported by substantial evidence. Tr. 430, 440, 448. Based on this evidence, the ALJ reasonably could infer that Plaintiff's type II diabetes was not as severe as alleged.

The ALJ further discussed that Plaintiff's diabetes contributes to her peripheral neuropathy, but that this condition imposes few disabling conditions. The ALJ detailed that contrary to Plaintiff's allegations of difficulties in her upper and lower extremities with burning, numbness, and tingling, Plaintiff's condition has improved over time. Tr. 31. The ALJ detailed that medical records from August 15, 2013 onward consistently indicate that Plaintiff has denied experiencing any numbness or tingling in her extremities, and that she has normal grip strength for her age, contradicting Plaintiff's allegations. Tr. 31, 500, 513, 515, 532, 534, 541, 554, 561. Also, the ALJ

noted that Plaintiff has not experienced edema or cellulitis and has normal sensation in her extremities, and her treatment has been limited to neurontin. Tr. 431, 500. The ALJ's findings are wholly supported by substantial evidence and are a reasonable interpretation of the record. As the ALJ correctly indicated, Plaintiff's peripheral neuropathy appears to have improved given that neurontin was no longer prescribed in 2014 and 2015. *See, e.g.,* Tr. 533, 536, 551, 571. The ALJ found that Plaintiff's peripheral neuropathy could cause some pain and discomfort, and thus limited Plaintiff to sedentary work with additional limitations. Tr. 32. The ALJ appropriately discounted her testimony on this basis. *See Tommasetti*, 533 F.3d at 1039 (finding ALJ properly discounted claimant's testimony where evidence showed medication was effective in controlling pain).

The ALJ thoroughly discussed Plaintiff's asthma and COPD, and that these conditions impose a mild airway obstruction and are effectively controlled with prescribed inhalers and a nebulizer on an as needed basis. Tr. 30. The ALJ found that contrary to Plaintiff's contention, her asthma and COPD are not disabling, but do warrant limiting her exposure to fumes, dusts, gases, or poor ventilation. The ALJ's findings are fully supported by substantial evidence in the record, are a rational interpretation of the record, and the ALJ appropriately discounted Plaintiff's credibility on this basis. Tr. 32, 389, 422, 444, 558, 564-73; *Tommasetti*, 533 F.3d at 1039-40 (finding evidence of claimant's favorable response to minimal and conservative treatment undermines credibility).

The court concludes that when this rationale is combined with the ALJ's first rationale, they provide specific, clear and convincing support for discounting Plaintiff's subjective symptom testimony.

////

////

### C. Plaintiff's Allegations of Total Disability are Undermined by Her Activities of Daily Living

An ALJ may discount a claimant's subjective symptom testimony where participation in activities of daily living contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1104 (finding claimant's activities of attending church, talking walks, and spending time with grandchildren undermined claimant's assertion that she was incapable of human interaction without suffering debilitating panic attacks). The ALJ found Plaintiff's contention that she is capable of only light chores was contradicted by her statements to her treating physician that she was "working very hard with helping her family" and assisting with her sick father. Tr. 34, 556. To be sure, the ALJ reasonably could find Plaintiff's hearing testimony that she could only lift one gallon of milk was contradicted by her description of lifting or dragging 40 pound bags of pellets. Tr. 34, 59-60, 554. Additionally, the ALJ found that Plaintiff's alleged physical limitations were undermined by several reports in the record that she intermittently attempted to include exercise into her daily routine with mixed results. Tr. 413, 419, 421, 430, 558. The ALJ's findings are fully supported by substantial evidence in the record as a whole. The court concludes the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

## II. ALJ Did Not Err in Evaluating Dr. Santana's Opinion

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

[the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted) (alterations in original); 20 C.F.R. § 416.927(c). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Garrison*, 759 F.3d at 1012. When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Plaintiff complains that the ALJ erroneously rejected the opinion of her treating physician Dr. Santana. On December 18, 2013, Dr. Santana completed a check-the-box Functional Capacity Questionnaire provided by Plaintiff's attorney. Tr. 517-18. In the Questionnaire, Dr. Santana indicated that Plaintiff suffers from multiple signs and symptoms of fibromyalgia, and that her symptoms frequently impair her ability to maintain attention and pace, and that she would need to take five additional breaks of 15 to 20 minutes as a result of her pain, fatigue and other symptoms. Tr. 517. Dr. Santana opined that Plaintiff would need to have ready access to a bathroom up to 15 times a day due to her irritable bowel syndrome. Tr. 517. Dr. Santana further opined that Plaintiff would miss four or more days of work each month due to her impairments. Tr. 517. Dr. Santana estimated Plaintiff could walk for 15 to 20 minutes and could stand for one hour each day, could sit for two to three hours at a time for up to six hours, could lift and carry 15 to 20 pounds frequently and 25 pounds occasionally, has difficulty with her hands for extended times or for repetitive

activities, and would need to alternate between sitting and standing. Tr. 517. Finally, Dr. Santana opined that Plaintiff has severe depression with PTSD that impacts her ability to work.

Because Dr. Santana's opinion was contradicted,[4] the ALJ was required to provide specific and legitimate reasons, backed by substantial evidence, for discounting his opinion. In the decision, the ALJ provided several reasons for giving Dr. Santana's opinion "little weight," including: (1) he is not a mental health specialist; (2) his check-the-box opinions are not supported by a narrative explanation or objective evidence; (3) his opinions are not consistent with his own treatment records; and (4) his opinions are based on Plaintiff's previously discounted self-reports. Having carefully reviewed the record, the court concludes that the ALJ's reasoning readily satisfies the requisite standard.

First, the ALJ discounted Dr. Santana's opinion concerning Plaintiff's mental health limitations because it is outside the area of his expertise. The ALJ described that Dr. Santana opined that Plaintiff would have difficulty maintaining her concentration, persistence and pace, and that her depression is severe, and that Dr. Santana is a general practitioner with no special qualifications in psychiatric diagnosis or treatment. Tr. 36, 517. *See* 20 C.F.R. § 404.1527(d)(5) (generally more weight is given to the opinion of a specialist about issue related to his or her specialty); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (noting opinions of specialists are given more weight than opinions of nonspecialists). The ALJ gave more weight to examining psychiatrist Dr. Reagan's opinion over that of Dr. Santana, a finding unchallenged by Plaintiff. Tr. 36. As the ALJ observed

---

[4] Dr. Santana's opinion was contradicted by those of examining physician Raymond Nolan, M.D., examining psychologist Charles P. Reagan, M.D., and agency reviewing physicians Dorothy Anderson, Ph.D., Joshua Boyd, Psy.D., Martin B. Lahr, M.D., and Sharon B. Eder, M.D. Tr. 98-101, 136-139, 493, 499.

when discounting Plaintiff's subjective symptom testimony, Plaintiff has not sought counseling or consistent treatment with a mental health specialist. Tr. 34. The ALJ's findings in this regard are backed by substantial evidence.

Second, an ALJ may permissibly discount physicians' opinions provided in a "check-off reports" where there is no "explanation of the bases of their recommendations." *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Molina*, 674 F.3d at 1111-12 (finding ALJ permissible discounted physician's opinion provided in check the box form without explanations). Here, the ALJ detailed that Dr. Santana checked all positive boxes for fibromyalgia, including that Plaintiff experiences positive tender points, but failed to provide a narrative explanation for his opinion. Tr. 37. The ALJ further discussed that Dr. Santana failed to provide an explanation of how often he has observed Plaintiff's symptoms, including their frequency and severity, or reference any testing he undertook. To be sure, as the ALJ correctly observed, the record is devoid of any fibromyalgia testing conducted by Dr. Santana. *See* Tr. 502, 506, 513. The ALJ's findings are wholly supported by substantial evidence in the record, and provides a specific and legitimate basis for discounting Dr. Santana's opinion.

Third, the ALJ discounted Dr. Santana's opinion concerning Plaintiff's fibromyalgia symptoms and limitations because it was undercut by his own treatment notes. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (holding ALJ appropriately discounted physician's opinion inconsistent with own clinical findings); *see Correa v. Comm'r Soc. Sec. Admin.*, Case No. 1:14-cv-01436-MA, 2015 WL 5139336, at *8 (D. Or. Sept. 1, 2015 ) (upholding ALJ's decision to discount physician's opinion inconsistent with own treatment notes). As the ALJ detailed, Dr. Santana's November 8, 2013 reflects that Plaintiff complained of a past medical history of fibromyalgia, yet

on physical examination, he observed Plaintiff to have a normal gait and station, fully normal joints, with no indication of weakness or tenderness. Tr. 36-37. Dr. Santana's treatment notes from August 2013 similarly reflect that Plaintiff had a normal muscloskeletal examination. Tr. 513-15. As the ALJ correctly indicated, Dr. Santana's treatment notes do not reflect that he ever performed a tender point examination of Plaintiff to confirm her prior fibromyalgia diagnosis. The ALJ's findings are wholly supported by substantial evidence and provide a specific and legitimate basis for discounting Dr. Santana's December 2013 opinion.

Fourth, the ALJ gave Dr. Santana's opinion concerning Plaintiff's physical limitations little weight because they were premised "almost exclusively" on Plaintiff's discredited self-report. Tr. 37. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (internal citation omitted); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that because record supported ALJ's discounting of claimant's credibility, ALJ "was free to disregard [examining physician's] opinion, which was premised on [claimant's] subjective complaints"). As noted above, the ALJ correctly indicated that Dr. Santana's diagnosis of fibromyalgia appears premised on Plaintiff's discredited self-reports as there are no treatments reflecting that Dr. Santana conducted a tender points examination. Tr. 36. The ALJ indicated that Dr. Santana's opinion concerning Plaintiff's physical functional limitations was inconsistent with the underlying objective medical evidence. As discussed in great detail above, the ALJ appropriately discounted Plaintiff's subjective reports about the severity of her knee, hip, and shoulder pain as not fully supported by objective medical evidence and imaging. Although Plaintiff reported myalgia's and back pain in November 2013, on examination, Dr. Santana's treatment notes indicate normal

gait and station, normal joints and normal muscle tone. Tr. 507-08. Likewise, Dr. Santana's August 2013 treatment notes show normal gait and station, normal range of motion, with normal strength and muscle tone, and his December 2013 does not reveal any musculoskeletal complaints raised by Plaintiff. Tr. 502-04, 514-15. Given the lack of objective evidence in Dr. Santana's contemporaneous treatment notes supporting the severity of Plaintiff's physical limitations, the ALJ could reasonably infer his assessed physical limitations were premised on Plaintiff's subjective complaints. Because the ALJ appropriately discounted Plaintiff's subjective complaints, the ALJ reasonably discounted Dr. Santana's opinion on the same basis. *Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir. 2017) ("'A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.'") (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). The ALJ's findings are wholly supported by substantial evidence in the record and provide a specific and legitimate basis for discounting Dr. Santana's opinion of Plaintiff's physical limitations.

In short, the ALJ provided several specific and legitimate reasons, backed by substantial evidence, for discounting Dr. Santana's opinion. The ALJ did not err.

## III. The ALJ Did Not Commit Harmful Error at Steps Two and Five

### A. Step Two

Plaintiff contends the ALJ made two errors in the step two analysis. First, Plaintiff argues that the ALJ erred in concluding that her diarrhea, shoulder impingement, and degenerative disc disease were not severe impairments. Second, Plaintiff argues that the ALJ erred in concluding that her fibromyalgia was not a medically determinable impairment. The Commissioner responds that

any alleged error at step two is harmless because step two was resolved in Plaintiff's favor, and any credited functional limitations were included in Plaintiff's RFC. The Commissioner is correct.

Plaintiff's first argument is not well-taken. The step two inquiry is a *de minimus* screening device used to dispose of groundless claims. *Buck*, 869 F.3d at 1048 (holding step two is a is a "threshold determination meant to screen out weak claims"). The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20 C.F.R. § 416.912(a). An impairment or combination of impairments is "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation omitted). Where the ALJ fails to identify a severe impairment at step two, but nonetheless considers the limitations from that impairment at subsequent steps, any error at step two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Because step two was resolved in Plaintiff's favor, the court need only consider whether the ALJ properly accounted for Plaintiff's alleged functional impairments from her diarrhea, shoulder impingement, and degenerative disc disease when formulating Plaintiff's RFC. *Buck*, 869 F.3d at 1049 (noting that Plaintiff "could not possibly have been prejudiced" where step two resolved in claimant's favor and limitations accounted for in formulating RFC).

Contrary to Plaintiff's suggestion, the ALJ did not ignore her shoulder impingement. At step two, the ALJ found Plaintiff's bilateral shoulder degenerative disease a severe impairment. Tr. 21. Tr. 21, 28. Additionally, the ALJ thoroughly discussed her complaints of shoulder pain when discussing Plaintiff's credibility. Tr. 29-30. As analyzed thoroughly above, the ALJ found that Plaintiff's alleged functional limitations resulting from her shoulder pain were not fully supported by the objective medical evidence and properly discounted her credibility on this basis. Tr. 30. The

ALJ discussed that Plaintiff has some degenerative changes in her shoulders, but that the 2015 evidence of rotator cuff tears were expected to heal within 12 months, and thus did not meet the durational requirement. Tr. 30. To the extent that the ALJ found Plaintiff's functional limitations in her shoulders credible and supported by the record, the ALJ accounted for them in the RFC by limiting her to sedentary work with only occasional overhead reaching bilaterally.

Likewise, with respect to Plaintiff's alleged diarrhea, irritable bowel syndrome, and lumbar degenerative disc disease, Plaintiff fails to identify any specific credited functional limitations that the ALJ failed to take into account when assessing the RFC. The ALJ thoroughly discussed the medical evidence concerning Plaintiff's gastrointestinal problems, including her diarrhea, IBS, and GERD, and found that her complaints have been inconsistent, that she has received conservative treatment, and that the records reflect her GERD has been well-controlled with over the counter medications. Tr. 22. The ALJ's findings are fully supported by substantial evidence and are a reasonable interpretation of the medical record. The ALJ resolved step two in Plaintiff's favor, and the ALJ properly included in the RFC those limitations supported by and consistent with substantial evidence. *Buck*, 869 F.3d at 1049; *Batson*, 359 F.3d at 1197 (holding evidence that is permissibly discounted is not required to be included in RFC).

Turning to Plaintiff's second argument, she contends that the ALJ erred in concluding that her fibromyalgia was not a medically determinable impairment. An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. SSR 96-4p, *available at* 1996 WL 374187, at *1-2; 20 C.F.R. § 416.913(a). Specifically regarding fibromyalgia, a claimant has a medically determinable impairment if an acceptable medical source diagnosed that condition, "reviewed the [claimant's] medical history[,] and conducted a

physical exam." SSR 12-2p, *available at* 2012 WL 3104869, at *2. In addition, the acceptable medical source must "provid[e] evidence [described] in section II(A) or section II(B)," which are "generally base[d] on the 1990 American College of Rheumatology (ACR) Criteria." *Id.* at *2-3. Section II(A) mandates, in relevant part, a history of widespread pain that has lasted for a minimum of 3 months, "[e]vidence that other disorders that could cause the symptoms or signs were excluded," and "[a]t least 11 positive tender points on physical examination." *Id.* at *3.

According to Plaintiff, Dr. Nolan found twelve tender points on his examination, and Dr. Santana opined that Plaintiff has six or more fibromyalgia symptoms, including widespread musculoskeletal pain, fatigue, sleep disturbance, irritable bowel issues, depression and anxiety. Tr. 517-18. And, Plaintiff contends that she has had laboratory testing to rule out other causes of her symptoms, including a sleep study determining that she has sleep apnea. Pl.'s Br. at 8-9, ECF No. 9. Plaintiff contends that the ALJ erroneously rejected Dr. Santana's opinion that she is unable to meet attendance standards for competitive employment due to the fatigue cause by her fibromyalgia. Pl.'s Br. at 9, Tr. 517. The court disagrees.

As discussed above, the ALJ properly discounted Dr. Santana's opinion and therefore the ALJ was not required to include those limitations in the RFC. *Batson*, 359 F.3d at 1197. Although the ALJ appeared to overlook that Dr. Nolan conducted a tender points examination, as the Commissioner concedes, Dr. Nolan did not definitively diagnose fibromyalgia. The court observes that Plaintiff does not challenge the ALJ's evaluation of Dr. Nolan's opinion. Notably, Dr. Nolan indicated that his "[e]xam is supportive of, but not absolutely diagnostic for, a diagnosis of fibromyalgia." Tr. 500. Dr. Nolan also opined that "[a]ssuming the accuracy of the diagnosis of fibromyalgia, she would do better with more sedentary work activity and can perform repetitive

activities on [an] occasional basis." Tr. 500. Importantly for the court's analysis, the ALJ credited Dr. Nolan's opinion concerning Plaintiff's functional limitations that she be limited to sedentary work with repetitive activities on an occasional basis and included those limitations in the RFC. Tr. 35. The court concludes the ALJ did not commit harmful error at step two. *Buck*, 869 F.3d at 1049 (holding ALJ does not err at step two where all credited functional limitations are included in RFC).

## B.     Step Five

Plaintiff contends that the ALJ erred at step five by identifying jobs that require repetitive hand use. Plaintiff argues that she has been diagnosed with peripheral neuropathy in her upper and lower extremities and testified that she is able to use her hands for only 20 minutes at a time. Pl.'s Br. at 15; Tr. 71. According to Plaintiff, the jobs identified by the VE (addresser, DOT 209.587-010; semiconducter wafer breaker, DOT 726.687-046; and document preparer, DOT 249.587-018) would all be excluded if she was limited to occasional repetitive activities with her hands.

As discussed above, the ALJ properly discounted Plaintiff's subjective symptom testimony about the impact and severity of her peripheral neuropathy and her allegations of numbness, burning and tingling in her hands. Tr. 31. Indeed, the ALJ detailed Plaintiff's inconsistent reports of numbness and tingling, that she retains normal grip strength for her age, and that her condition has been successfully treated with neurontin. Tr. 431, 500, 513 515, 532, 534, 541, 554, 561. The ALJ's findings are wholly supported by substantial evidence. The ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). The ALJ did not err in excluding her alleged hand use restriction from the hypothetical question posed to the VE.

Plaintiff also appears to contend that because the ALJ credited Dr. Nolan's opinion that Plaintiff "should perform more sedentary work activity with repetitive activities on [an] occasional basis" with respect to her fibromyalgia, the ALJ was required to include a limitation to occasional repetitive activities with her arms and hands. The court disagrees.

In the decision, the ALJ's RFC included a limitation to occasional overhead reaching bilaterally in the RFC and sedentary work. Contrary to Plaintiff's suggestion, Dr. Nolan's opinion did not explicitly include a limitation on repetitive hand use, nor is such a limitation a required interpretation of his opinion. Dr. Nolan's examination indicated Plaintiff's hands and fingers had no joint deformities, no tenderness to palpation, with a normal range of motion and normal grip strength. Tr. 500. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Given that Plaintiff does not specifically challenge the ALJ's evaluation of Dr. Nolan's opinion, and that Dr. Nolan did not explicitly include a limitation on repetitive hand use, the court concludes the ALJ's RFC determination adequately incorporated Dr. Nolan's opinion. *Id.*; *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (concluding that ALJ is required only to incorporate particularized limitations in the RFC, or must explain why limitation is omitted). Because the hypothetical posed to the VE included all those limitations the ALJ found credible and supported by substantial evidence in the record, the ALJ's reliance on the VE's testimony was proper. *Bayliss*, 427 F.3d at 1217. The ALJ did not err at step five.

////

////

////

29 - OPINION AND ORDER

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to Plaintiff is AFFIRMED.

IT IS SO ORDERED.

DATED this **27** day of JULY, 2018.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge